[Cite as *State v. Jackson*, 2012-Ohio-288.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24472 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3596 |
| v. | : | |
| | : | |
| ANGELA JACKSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of January, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

AARON D. LOWE, Atty. Reg. #0085954, 703 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}  Angela Jackson appeals from her conviction and sentence on one count of aggravated theft, two counts of misuse of a credit card, and six counts of forgery.

{¶ 2}   In her sole assignment of error, Jackson contends the trial court erred in determining the dollar amount of her restitution obligation.

{¶ 3}   The record reflects that Jackson was employed as a property manager for the Indian Creek Condominium Association (ICCA) for approximately two and one-half years. On July 13, 2010, she pled guilty to two counts of misuse of a credit card and six counts of forgery in connection with her employment. At that time, Jackson also started to enter a no-contest plea to one count of aggravated theft, a third-degree felony. The trial court held that plea in abeyance, however, noting that Jackson disputed whether her theft involved more or less than $100,000.[1] (Transcript, Vol. I at 8-9, 18-19). To resolve the dispute, the parties agreed that the trial court would determine the dollar amount of the theft at a future hearing. (*Id.* at 19).

{¶ 4}   On December 3, 2010, the trial court held a restitution hearing. The parties agreed that the trial court would finish the plea hearing with regard to the theft charge after taking testimony and determining whether Jackson's theft involved more or less than $100,000. (*Id.* at 22-24). The trial court noted that the issue was significant because under then-existing R.C. 2913.02 theft of less than $100,000 was a fourth-degree felony whereas theft of more than $100,000 was a third-degree felony.[2] (*Id.* at 23-24). The trial court then heard testimony from three prosecution witnesses and three defense witnesses, including Jackson. Following the hearing, the trial court filed a decision and entry in which it found that Jackson owed ICCA restitution of $206,545.35. Based on that determination, the trial court

---

[1]The Bill of Particulars filed February 1, 2010, had alleged that the defendant stole $290,046.63.

[2]Parenthetically, we note that effective September 30, 2011, the dollar amounts for the various theft offense levels under R.C. 2913.02 were increased.

concluded that she properly had been charged with third-degree felony theft. (Doc. #30).

{¶ 5}   On January 4, 2011, Jackson returned to court to complete her plea on the charge of theft as a third-degree felony. At the outset of this hearing, the trial court reiterated its finding that Jackson's theft involved more than $100,000, making her offense a third-degree felony, as charged in the indictment. (Transcript, Vol. II at 398-400). After repeating that finding, the trial court asked Jackson how she pled. She responded by pleading no contest to count one, which charged aggravated theft, a third-degree felony. (*Id.* at 400). The trial court found her guilty. (*Id.* at 401). It later imposed an aggregate three-year prison sentence and ordered restitution of $206,545.35. (*Id.* at 411). This appeal followed.

{¶ 6}   As set forth above, Jackson's assignment of error challenges the trial court's restitution determination. In support, she contends the State failed to prove that she misappropriated ICCA's funds and made unauthorized personal purchases with ICCA's credit card. Jackson claims the State's witnesses lacked personal knowledge about which charges were authorized. She further contends the testimony of defense witness Mark Wagner, who served as president of ICCA's board, established that almost every expenditure she made was authorized and was for legitimate business purposes.

{¶ 7}   At the outset of our analysis, we note that Jackson raises the restitution issue in the context of challenging her conviction for third-degree felony theft instead of fourth-degree felony theft. Although the record reflects that Jackson engaged in numerous financial transactions using ICCA's money, she does not address those transactions individually. Instead, she argues, broadly, that the record contains "reasonable and legitimate explanations for virtually every expense[.]" Therefore, she contends the trial court erred in

finding that her theft exceeded the $100,000 threshold for a third-degree felony. Jackson asks us to "reverse and remand the trial court's determination of restitution to reflect an amount under $100,000." (Appellant's brief at 7).

**{¶ 8}** Upon review, we find Jackson's argument to be without merit. Insofar as she challenges the trial court's restitution calculation as grounds for a third-degree felony theft conviction, she forfeited her ability to raise the issue by pleading no contest. Jackson's argument that the trial court erred in finding that she stole more than $100,000 necessarily challenges the sufficiency or weight of the State's evidence. But "[a] defendant who pleads no contest to a charge may not later attack the sufficiency or weight of the evidence under which he was convicted." *State v. Hurt*, 2d Dist. Montgomery App. No. 21009, 2006-Ohio-990, ¶ 35. Therefore, Jackson cannot now argue that the trial court erred in convicting her of theft as a third-degree felony.

**{¶ 9}** Finally, to the extent that Jackson might be challenging her restitution obligation directly, we reject her claim that the trial court erred in ordering restitution of more than $100,000. During the hearing below, Jackson's counsel stipulated that she had stolen more than $54,000. Counsel also admitted theft beyond the stipulated amount but could not say how much. (Transcript, Vol. I at 31). Jackson later testified and admitted stealing approximately $62,000 to $63,000. (Transcript, Vol. II at 367-368).

**{¶ 10}** The State presented evidence, however, showing that Jackson stole much more. Cathy DiGiorgio, who served as an ICCA board member shortly before Jackson's employment, testified that she was responsible for determining how much Jackson had stolen after the theft was discovered. (Transcript, Vol. I at 34). DiGiorgio testified that Jackson's

responsibilities included managing the property, collecting condo association dues, paying bills, and keeping the books. (*Id.* at 34-35). According to DiGiorgio, Jackson had access to all of ICCA's funds. (*Id.*). DiGiorgio's investigation revealed that approximately $111,000 should have been deposited into ICCA's reserve fund from condo association dues during Jackson's employment. DiGiorgio testified that the $111,000 was not deposited into the reserve fund and that it was missing. (*Id.* at 77-80, 101-108, 179). This testimony supports a finding that Jackson stole more than $100,000.

{¶ 11} DiGiorgio also reviewed numerous financial records, including bank statements and credit-card bills. Based on that review, she concluded that Jackson had made dozens of unauthorized personal purchases on an ICCA credit card and had made unauthorized payments to herself and relatives. According to DiGiorgio, these improper expenditures exceeded $100,000. (*Id.* at 92-93, citing State's exhibit 2). In DiGiorgio's opinion, the total amount of Jackson's theft was $219,825.50. (*Id.*).

{¶ 12} On appeal, Jackson contends DiGiorgio was not competent to testify about whether the credit-card purchases were authorized. Because DiGiorgio was not a board member during Jackson's employment, Jackson contends DiGiorgio lacked personal knowledge as to whether the board had approved the charges. We disagree. Based on her recent past membership on ICCA's board, DiGiorgio was familiar with its policies and practices. While it was possible those policies and practices could have changed after DiGiorgio's term expired, the record contains evidence that they did not change. Notably, another prosecution witness, Robert Lutz, testified that he served on ICCA's board *during* Jackson's employment. (Transcript, Vol. I at 181, 187). According to Lutz, he gave Jackson an

ICCA credit card to use. He instructed her to use it only for "special purchases." (*Id.* at 183-184). It was not for "routine use." (*Id.* at 193). Jackson did not have permission to use the card for "personal expenses." (*Id.* at 185). Among the records admitted into evidence, however, were copies of monthly statements showing that the credit card subsequently was used to pay electric bills, cable television bills, Cricket phone bills, Cingular phone bills, and AT&T bills. The credit card also was used at Marco's Pizza, McDonalds, Burger King, Taco Bell, Papa Johns, and other restaurants. In addition, it was used to make thousands of dollars of purchases from grocery stores, Lowes, and Home Depot. Other charges on the credit card were for a stay at a Holiday Inn in Tennessee, a purchase from Aeropostale, an airline ticket, a tanning bed, and a $319.50 charge at the Monkey Bones Tattoo Parlor. Finally, the credit card was used many times at gas stations. Based on Lutz's testimony and these records, the trial court reasonably could have concluded that the foregoing charges were unauthorized.

{¶ 13} In support of her argument, Jackson relies largely on her own testimony and the testimony of Mark Wagner, who served as president of ICCA's board during part of her employment. Although Jackson claimed to have had permission for her purchases, she was unable to produce receipts showing what she had purchased or how the purchases had benefitted ICCA. She also admitted providing ICCA with "doctored" financial records that were inaccurate. (Transcript, Vol. II at 380-381). Jackson additionally characterized some of her time with ICCA as a "blur" due to her heavy drug use. (*Id.* at 368).

{¶ 14} With regard to Wagner, his testimony provided limited support for Jackson. Wagner testified that Lutz "was never around." (Transcript, Vol. I at 220). Wagner testified that he was Jackson's primary supervisor. (*Id.* at 223). Wagner also suggested that some of the

disputed credit card charges were, or may have been, authorized. (*Id.* at 225-236). He further testified that a number of residents were behind on their association dues and that ICCA had other financial obligations. (*Id.* at 240-241). We note, however, that the trial court expressly found Wagner's testimony to be "suspect" and "of little value." (Transcript, Vol. II at 408). The trial court apparently believed that Wagner's testimony was colored by his personal relationship with Jackson. During his testimony, Wagner admitted that he had purchased Jackson a ring and sent her a "love note." (Transcript, Vol. I at 245). As the trier of fact, the trial court was permitted to evaluate Wagner's testimony and to give the testimony whatever weight it found appropriate.

{¶ 15} We see no abuse of discretion in the trial court's determination that Jackson's restitution obligation exceeded $100,000, a figure that is supported by competent, credible evidence. *See State v. Rose*, 2d Dist. Montgomery App. No. 24196, 2011-Ohio-3616, ¶ 8 (noting that a trial court acts within its discretion in ordering restitution if the record contains competent, credible evidence to support the restitution award). Jackson's assignment of error is overruled.

{¶ 16} The trial court's judgment is affirmed.

. . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Montgomery County
Prosecutor's Office
301 W. Third Street, 5th Floor
Dayton, OH 45422

Aaron D. Lowe
703 Liberty Tower
120 W. Second Street
Dayton, OH 45402

Hon. Frances E. McGee
Montgomery County
Common Pleas Court
41 N. Perry Street
Dayton, OH 45422